# Staunton.

## Yost v. Porter & Als.

### October 8th, 1885.

1. Chancery Practice—*Parties—Rule.*—All persons beneficially interested in object of suit must in general be made parties, so that all questions arising may be fully and finally settled.

2. Idem—*Sale for purchase money— Terms.*—Sale for purchase money will not be decreed where the property remains encumbered for purchase money due from plaintiff, without providing for discharge of such encumbrance. Terms of sale are within court's discretion, and no complaint against them will be heard without evidence that the price would have been better had the terms been more liberal.

3. Idem — *Upset-bid.*—Where after sale, fairly made for adequate price, has been confirmed, an upset bid is offered, and the sale is set aside upon condition that said bid be made good by a certain time, when the re-sale should take place upon terms which would not extend the deferred payments beyond the time at which the bonds taken at the previous sale were to become due, and no complaint of said terms was made below, and no proof offered that upset-bidder could have complied with his bid had the terms been more liberal, there is no ground on this account for complaint in the appellate court. *Langyher* v. *Patterson and als.* 77 Va. 470.

4. Idem—*Interlocutory decrees—Costs.*—No complaint can be made even by the party substantially prevailing, against non-allowance of costs upon an interlocutory decree, as upon final decree the question of costs can be properly adjusted.

5. Idem—*Suspension of decree—Judge's delay.*—Where, in such case of upset bid and conditional setting aside of sale and suspension of decree of sale to a certain period in order to give upset-bidder opportunity to comply with the conditions of re-sale, he applies to the judge in vacation for an extension of such suspension in order to give time to apply

for appeal and *supersedeas*, and the judge delays acting on such application till after the period within which compliance was permissible, such action of the judge could not be corrected by the appellate court.

Argued at Wytheville, but decided at Staunton.

Appeal from seven interlocutory decrees of circuit court of Wythe county rendered from March term, 1883, to April term, 1885, inclusive, in the cause of D. H. Porter *against* W. R. B. Horne, W. L. Yost and others.

Opinion states the case.

*F. S. Blair*, for the appellant.

*D. S. Pierce* and *J. W. Caldwell*, for the appellees.

Lewis, P., delivered the opinion of the court.

The petition for appeal is voluminous, assigning no less than twenty-eight errors in the decrees complained of, for which, "and for other errors to be assigned at bar," it is insisted that those decrees should be reversed. To notice these assignments, severally and in detail, would swell this opinion to no small proportions; nor is it necessary to do so. They have all been considered, and none of them are well taken. Only those upon which stress is chiefly laid will be noticed specially. Before, however, doing so, it may be well to advert to the pleadings, and other proceedings in the cause, and to the object for which the suit was instituted.

The bill was filed by the appellee, Porter, to subject to the satisfaction of a bond for one thousand dollars, then past due, which had been assigned to him by one W. R. B. Horne, for valuable consideration, a certain house and lot in the town of Wytheville. This bond was executed by the appellant, Yost, to Horne, as part consideration of the purchase of the said house and lot, and was secured by a lien thereon. It seems

that the lot had been conveyed by Horne to Yost, and a lien for the purchase money retained on the face of the conveyance, and that a like lien had been retained in the deed to Horne from his vendor, Percival.

At the time of the assignment of the bond to the plaintiff, there was an unascertained balance due by Horne to Percival on account of the purchase of the property, and upon this ground payment of the bond was refused by Yost, when payment was demanded by the plaintiff, who thereupon instituted the present suit. And to the bill he made not only Yost, but Percival and Horne, parties defendant, to the end that the rights of all the parties might be adjusted under decrees of the court, and the property sold to satisfy the bond which had been assigned to him.

Separate answers were filed by the defendants, and Yost also demurred. The answer of Percival was treated as a cross-bill, to which the defendant, Horne, duly filed his answer. The answer of Yost referred at some length to the transactions between the parties, and concluded as follows: "Respondent is advised that a court of equity will not determine the matter in this cause without a reference for a full account of all matters between the parties thereto, to the end of a final settlement of same, and asks for said account." Accordingly, a decree was entered, referring the cause to a commissioner for proper accounts to be taken, who at once proceeded to execute the decree, and duly returned his report to the court. To this report there was no exception by the defendant, Yost, and the rights of the other parties appear to have been settled by the commissioner's report, and subsequent decrees, to their mutual satisfaction.

In due time a sale of the house and lot was decreed, which was afterwards made and reported by commissioners appointed for the purpose, the price bid being $2800, which was the precise sum for which the property had been purchased by Yost of Horne. The report of sale, however, was excepted to

by Yost on various grounds, and the court refused to confirm the same, and directed the commissioners, after due advertisement, to offer the property for sale again. The second effort resulted like the first, namely, in obtaining a bid for the sum of $2800. The sale was duly reported to the court, and Yost again excepted; but the exceptions were overruled and the sale confirmed. At a subsequent day of the same term, however, a decree was entered, permitting one H. Simmerman to make good an upset bid of ten per cent. of the purchase price within thirty days thereafter, upon certain prescribed conditions, and providing, that in the event the same was done, the property should be again offered for sale; otherwise, the previous decree of confirmation to stand.

After the adjournment of the term, a written application for the suspension of the execution of the decree requiring possession of the property to be delivered to W. O. Moore, the purchaser, was mailed by Yost to the judge of the circuit court, then holding a term of his court in the county of Carroll, which, for reasons endorsed on the application was refused. And thereupon the present appeal was allowed by one of the judges of this court.

The first error assigned in the petition, is the action of the circuit court in overruling the demurrer to the plaintiff's bill. No grounds, however, for this assignment are set forth in the petition, and a careful scrutiny of the bill fails to disclose that any exist. It was undoubtedly the right of the plaintiff to bring before the court all the parties having an interest in the property, that their respective rights might be definitely ascertained and settled, and the way thus cleared for the enforcement of the lien to satisfy the bond held by him. And such would seem to have been the desire of the appellant himself at the time his answer was filed, since, as we have seen, he expressly asked for an account, in order that a final settlement of all matters between the parties might be made under decrees of the court.

"It is the constant aim of courts of equity," says Judge Story, "to do complete justice, by deciding upon and settling the rights of all persons interested in the subject-matter of the suit, so that the performance of the decree of the court may be perfectly safe to those who are compelled to obey it, and also, that future litigation may be prevented. Hence, the common expression that courts of equity delight to do justice, and not by halves. And hence, also, it is a general rule in equity (subject to certain exceptions), that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all." Story's Eq. Pl. sec. 72. See also *Armentrout* v. *Gibbons*, 25 Gratt. 371; *Dabney* v. *Preston*, Id. 838; *Fitzgibbon* v. *Barry*, 78 Va. 755.

Nor is there anything in the record to show that the decree of sale was not properly made. It is not disputed that the appellant had paid but a small part of the purchase money he had contracted to pay, and that the whole of the balance was past due when the decree was entered. What right, then, has he to complain because he has thus been required to comply with his own voluntary obligations after the way for him to safely do so has been cleared by the court? One of the grounds upon which his complaint is based is, that the plaintiff can occupy no better position than his assignor, Horne, who, at the time the suit was instituted, was in no position to compel payment of the bond, because by his covenant he had bound himself to make to the appellant a deed in fee simple, with general warranty, within ninety days after the purchase of the property; and that although the deed had been made, yet there were incumbrances on the property, and until the same were removed, payment of the bond assigned could not be required. It is sufficient, however, to say, in answer to this objection, that the deed with general warranty from Horne and wife was accepted by the appellant with knowledge of the existence of the

prior lien for unpaid purchase money in favor of Percival, and that after the accounts between Horne and Percival had been settled, and provision had been made for the payment out of the proceeds of sale of the balance due by Horne to Percival, which by the decree was directed to be credited on the amount due by the appellant to Horne, there was no longer any semblance of reason for the refusal of payment by the appellant of the bond held by the plaintiff, since he was thereby enabled to pay the same without incurring any risk of loss whatever.

But it is further insisted, that the decree operates oppressively and unjustly, because the sale decreed was not on a reasonable credit.   By the terms of the decree, the commissioners were required to sell the property at public auction, to the highest bidder, "for one-fourth cash in hand, the residue to be divided into four equal interest-bearing instalments, due respectively in three, six, nine and twelve months from day of sale," the purchaser to give bond with good security, etc. Upon these terms the sale was made, and there is no evidence in the record to show that the price obtained was inadequate, or that the property would probably have commanded a better price if the sale had been made on more liberal terms.

But the appellant's principal objection relates to the decree in respect to the upset bid which was offered in the case. That bid was offered after the sale had been confirmed, and the decree provides as follows: "That if the said Henry Simmerman shall, within thirty days from this date, pay into the hands of commissioners Terry and Crockett, the sum of $280, and the further sum of $700, with interest from 10th November, 1884, and shall deposit with said commissioners his bond with security to be approved by them, and to secure the residue of the purchase money for which said house and lot was sold, on the 10th November, 1884, and to make good his upset bid, then said commissioners shall proceed to re-sell the said house and lot according to the terms of the former decree of sale in this cause, except that the deferred payments therein

provided for shall be so made in the re-sale as not to extend said deferred payments beyond the period provided for in the said decree of sale heretofore entered in this cause."

Thus, by the terms of this decree, the credit allowed, in the event that the upset bidder made good his bid, and a re-sale was made, was not to extend beyond the time at which the bonds for the deferred payments taken at the sale which had been confirmed were to become due. And in consequence of these terms, which in the petition for appeal are characterized as harsh and unprecedented, it is alleged by the appellant that the party desiring to make good his upset bid was rendered unable to do so. Of this, however, there is not a particle of proof in the record, and *non constat* that he could have complied with any terms, however reasonable or liberal.

But apart from this, it is to be observed that the sale was decreed for the collection of purchase money long past due; purchase money for property, with which the vendor had parted, on the faith of the vendee's promise to pay within a certain time, and of which the latter had been in the possession and enjoyment long after he had made default. Moreover, the question as to the terms of sale is, as a general rule, and more especially in a case like this, a matter resting in the sound discretion of the court; and its action ought not therefore to be disturbed by an appellate court, unless the same is palpably wrong. And this cannot justly be said of the action of the court of which the appellant complains. Indeed, it cannot be said that its action in dealing with the appellant has not been marked by a sprit of liberality throughout. Thus, although the sale, which was fairly made and for an adequate consideration, had been confirmed, yet, in the supposed interest of the appellant, and without objection on the part of the purchaser, a re-sale was directed upon compliance with certain prescribed conditions. And of those conditions no complaint was made in the lower court, nor is any foundation shown for the complaint now made to this court.

In *Langyher, trustee,* v. *Patterson and Bash,* 77 Va. 470, after the sale had been confirmed, the decree of confirmation was set aside and a re-sale ordered upon the offer of an advanced bid. Upon appeal by the purchaser to this court, the action of the circuit court was reversed. Judge Fauntleroy, in delivering the opinion of the court, after reviewing the authorities, said: " We think there was error . . . in setting aside the decree of confirmation . . in this case . . . for, though it was within the discretion of the court, at any time during the term, to set aside the decree and rescind the sale upon proper motion and notice to the purchaser and parties concerned, and for good cause shown, such, for instance, as a sacrifice of the property, yet it was in this case, so far as the record shows, not a sound, but apparently an arbitrary discretion, which calls for appellate correction by this court."

Plainly, then, under the circumstances of the present case, there was no right on the part of the appellant, or any other person, to demand a re-sale of the property, upon the mere offer of an upset bid, after the sale had been confirmed. And if, nevertheless, with the assent of the purchaser, the privilege of a re-sale was accorded, it could be enjoyed only on the terms which the court in its discretion saw fit to impose. Those terms it was optional with the upset-bidder to accept or not as he chose, and certainly there is nothing in them for which the action of the circuit court should be reversed.

Complaint is also made that costs were not awarded the appellant in the lower court. He claims to be entitled to costs, because, as he insists, he was not in default, since he could not safely pay the purchase money due by him, except under a decree of the court. It is sufficient, however, to say that no provision in respect to costs has as yet been made at all, and that it will be time enough to do so when the cause is ready for final decree.

Another subject of much complaint is the refusal of the circuit judge, in vacation, to make an order at the instance of the

appellant, to further suspend the execution of the decree requiring possession of the property to be delivered to the purchaser. The application was made under the provisions of sec. 4 of ch. 178 of the Code of 1873, which enacts that "at the instance of any person who desires to present such petition [for an appeal, or writ of error, or *supersedeas*], the court in which the judgment, decree or order is, may, during the term at which it is rendered or made, or the judge rendering such judgment, order or decree, may, within sixty days after such term is ended, make an order suspending the execution of such judgment, decree or order, for a reasonable time to be specified in such order, when such person shall give bond," etc.

It is complained that the judge unreasonably delayed action upon the application until it was too late to enable the appellant to obtain an appeal and *supersedeas* to stop the execution of the decree which he sought to have suspended. But this complaint is unsupported by the record; and it is difficult to see how, even if the action of the judge in that particular were open to criticism, it could now be corrected by this court. Nor is it necessary to enquire whether or not the course of the appellant himself has been influenced by a desire for unreasonable delay, since this is a matter not essential to the decision of the present case.

The remaining assignments of error are of even less importance than those to which we have referred. It is unnecessary to notice them, further than to say, as we have already said, that they are not well taken.

The decrees appealed from must therefore be affirmed.

DECREES AFFIRMED.