# Richmond

JONES AND OTHERS v. BUCKINGHAM SLATE CO., INC.

March 12, 1914.

Absent, Cardwell, J.

1. INTERPLEADED—*Final Decree.*—The only decree which can be made in favor of the complainant and against the defendants in an interpleader suit is that the bill was properly filed, giving the complainant leave to bring the property in dispute into court, and allowing him costs out of the property, discharging him from further liability, and directing the defendants to interplead and settle the conflicting claims among themselves. When such a decree is made, and the property is brought into court and accepted by the court, the decree is final as to the complainant.

2. APPEAL AND ERROR—*Decree Final as to One Party.*—A decree may be final as to one party and not as to another, depending upon the circumstances of the case.

3. APPEAL AND ERROR—*Amount in Controversy—Collateral Effect of Judgment—Former Decisions.*—The principle heretofore announced that where the effect of a judgment in a particular case is to draw in question the validity of a claim to an amount of greater value than the jurisdictional sum of the appellate court, although the amount involved in the present action is not as large as the minimum required, a writ of error will lie, if it appears that the judgment conclusively settles the rights of the parties to the larger amount, will not be extended further than the adjudged cases have gone.

4. APPEAL AND ERROR—*Amount in Controversy—Collateral Effect—Case in Judgment.*—Where the boundary between two tracts of land is incidental to the ownership of the royalties on slate taken from the land, this court has not jurisdiction of an appeal from a decree determining the ownership of such royalties where they amount to less than three hundred dollars.

5. APPEAL AND ERROR—*Showing Jurisdiction.*—The jurisdiction of the court must be made affirmatively to appear by the appellant.

Appeal from a decree of the Circuit Court of Buckingham county on a bill of interpleaded.  One of the defendants appeals.

*Appeal Dismissed.*

The opinion states the case.

*F. C. Moon* and *W. M. Justis, Jr.,* for the appellants.

*Smith & Gordon, Hubbard & Gayle, A. L. Pitts, Jr.,* and *J. F. Minor,* for the appellees.

*Keith, P.,* delivered the opinion of the court.

The Buckingham Slate Company filed a bill in the Circuit Court of Buckingham county, from which it appears that by deed dated November 23, 1904, Jennie S. Jones and others granted to the plaintiff the right to enter in and upon a certain tract of land for the purpose of searching for, quarrying, manufacturing, buying and selling roofing slate.  The deed provided for the payment by the Buckingham Slate Company, in March, June, September and December of each year, certain royalties on the roofing slate manufactured, and for the termination of the rights thereby conveyed upon the failure of the Buckingham Slate Company to pay the royalties as agreed.  Under this deed the company took possession of what is known as the Dutch Gap quarry, which was the portion of the tract especially in contemplation of the parties and situated on the southern part of the tract.  By deed dated August 7, 1909, one A. L. Pitts conveyed to the slate company the right to enter upon the land therein described for the purpose of searching for, quarrying and manufacturing roofing slate, with similar provisions as to the payment of roy-

alties to those contained in the deed from Jones and others, above mentioned.

After the execution of the deed from Pitts, the slate company proceeded to develop the Dutch Gap quarry in a southerly direction, and manufactured three hundred and thirty-two squares of roofing slate, on which, at fifteen cents per square, the stipulated royalties amounted to $49.80. Thereupon a controversy arose between Jennie S. Jones and others, grantors in the first deed, and A. L. Pitts, the grantor in the second deed, as to the true boundary line between their respective properties, and as to which of them was entitled to the royalties of $49.80 due on September 10, 1910; Mrs. Jones and her co-owners claiming that the true dividing line is some distance to the south from the southern end of the Dutch Gap quarry, as it existed on August 7, 1909; that the development at the southern end of the quarry was on their land; and that they are entitled to the whole of the $49.80 and any further royalties arising from that part of the quarry. On the other hand, Pitts claimed that the true dividing line between him and Mrs. Jones and her co-owners is just along the southern end of the Dutch Gap quarry, as it existed on August 7, 1909: and that he is entitled to the royalties of $49.80 and to any further royalties arising from that part of the quarry.

The slate company avers and charges that it has no interest whatever in the controversy about the dividing line, or about the ownership of the royalties; that it now has in hand the sum of $49.80 which it holds as a stakeholder, and is ready and willing and now offers to pay into court, or to either one of the claimants as the court may direct; that from time to time, as provided in the said deeds, it will have in hand further royalties which will be payable to one or the other of the claimants, and which it is ready and willing, as they accrue, to pay into

court or to either of the claimants as the court may direct; that it has not colluded and is not colluding with either of the claimants; that it does not know which of the conflicting claims is correct, and is in doubt as to which of the claimants is entitled to receive the royalties; that the said conflicting claims have placed it in jeopardy of suits by both of the claimants for the recovery of the royalties of $49.80, and for the recovery of further royalties from time to time, and also subjects it to the risk of defaulting in the payment of royalties, all of which would harass and oppress it and work irreparable loss and damage to it. It therefore prays that the grantors in the two deeds under which it holds may be made parties defendant and required to answer, that the conflicting claimants may be required to interplead as to the royalties of $49.80 and as to any other sums arising from the disputed boundary pending in this suit; that they may be required to adjust and settle their controversy; that complainant may be permitted to bring into court the royalties of $49.80 and any other such royalties which may arise pending this suit; that claimants may be enjoined and restrained from bringing any suit or suits against it on account thereof; and for further and general relief.

Mrs. Jones and her co-owners demurred to this bill as not sufficient in law, and for special grounds of demurrer say that the plaintiff is their tenant for years and leases from them, and has no right to attorn to any other person or to dispute or deny their title, and is estopped from so doing; nor has the plaintiff a right to file a bill of interpleader to require defendants to litigate their title.

Pitts answered, in substance admitting all the charges of the bill, denying all the allegations in the answer of Mrs. Jones and her co-owners inconsistent with his own answer, and praying that his answer may be treated as

a cross bill: that Mrs. Jones and her co-owners may be required to answer the same, answer under oath being waived.

Mrs. Jones and her co-owners took depositions to maintain her contention, and also asked leave to file an amended and supplemental answer; and the case coming on to be heard on March 16, 1911, the court refused to read the depositions filed by Mrs. Jones and her co-owners, overruled the demurrer filed by them, and decreed that they and A. L. Pitts should interplead as to the true boundary line between the properties mentioned in their respective deeds, as set out in the exhibits filed with the plaintiff's bill; and as to the royalties which had been brought into court, the slate company was directed to deposit them in bank to the credit of the court in settlement of the royalties due to defendants as their interest may hereafter appear, to March 1, 1911, and that the plaintiff do likewise, from time to time, pending this suit, and as the same become due and payable, deposit in said bank to the order of the court in this cause any further royalties to which the defendants may be entitled under the deeds, arising from the boundary which is in controversy between the defendants, and the plaintiff is directed to file a certificate of deposit with the clerk of this court, and it is further ordered that the plaintiff do recover of the defendants its costs by it about its suit in this behalf expended. And the decree then proceeds: "It appearing to the court that the issues of fact presented by the answer of the defendants, and as to which they have been required to interplead, should be determined by a jury, it is further adjudged, ordered and decreed that an issue out of chancery to be tried at the bar of this court be awarded to try the issue presented by the said conflicting claims of the defendants, and it is ordered that the issue shall be: Is the

true line between the lands of A. L. Pitts and the de-
fendants, Jennie S. Jones and others, as claimed by the
said A. L. Pitts, running through the open quarry
known as Dutch Gap quarry, or is said line as claimed
by the defendants south of the said open quarry, and in
this issue the said A. L. Pitts shall be plaintiff and the
said Jennie S. Jones and others shall be defendants."

This issue was tried and resulted in a verdict in fa-
vor of A. L. Pitts, upon which the court entered a decree
in December, 1911; and thereupon Mrs. Jones and her
co-owners, on November 9, 1912, presented a petition
for an appeal which was awarded.

The Buckingham Slate Company claims that every
interest it had in the litigation was decided and ended
by the decree of March 16, 1911, which was not appealed
from until November 9, 1912: and that more than a year
having elapsed, this court is without authority to con-
sider the cause so far as the slate company is con-
cerned; and this position seems to be well taken.

In *Cocke* v. *Gilpin*, 1 Rob. (40 Va.) 20, it is said, that
a decree is final when it either refuses or grants the re-
dress sought by the party claiming.

The only interest that the slate company had in this
controversy was with respect to the royalties due by it.
It was before the court only as a stakeholder, and when
the demurrer to the bill was overruled and the inter-
pleader was awarded, all connection of the slate com-
pany with the litigation ceased. The only decree which
could be made in favor of the complainant and against
the defendants in an interpleader suit was, that the bill
was properly filed, giving him leave to bring the prop-
erty in dispute into court, and allowing him costs out of
the property, discharging him from further liability, and
directing defendants to interplead and settle the con-

flicting claims among themselves. *Wakeman* v. *Kingsland,* 46 N. J. Eq. 113; 18 S. E. 680; 23 Cyc. 31, 35.

The decisions of this court establish that a decree may be final as to one party without being final as to all.

In *Royall* v. *Johnson,* 1 Rand. (22 Va.) 421, it is said, that ''When a decree is made as to one of several defendants, whose interests are not at all connected with each other, with a direction for the payment of costs as to that defendant, such decree is final as to him, although the cause may be still pending in the court as to the rest.''

In *Ryan* v. *McLeod,* 32 Gratt (75 Va.) 367, Judge Staples said: ''There is no intermediate class between final and interlocutory decrees. A final decree presupposes the termination of the cause in the lower court, before that of the appellate court commences. Whatever may be the rule where there are several parties having distinct interests, it may be safely assumed that a decree cannot be in part final and in part interlocutory in the same cause, for or against the same parties who remain in court. Whenever a particular relief is contemplated, if something remains to be done by the court to make the relief effectual, that is an interlocutory decree. When no further action of the court is required, the decree is final.''

In *Gardner* v. *Stratton,* 89 Va. 900, 17 S. E. 553, the court held, that ''As to Gardner the decree is final, though not as to the other parties. It settled the question that he had no interest in the land, and that was the only question in which he was concerned. This court has repeatedly decided that a decree may be final as to one party and not as to another, depending upon the circumstances of the case.''

In the case before us, as we have already said, the only interest the Buckingham Slate Company had in

the controversy was as a stakeholder. When under the direction of the court it brought the money into court and the court received it, undertook to dispose of it and rendered a decree for costs, nothing further was left in which the slate company was interested. As to it the whole controversy was decided, and what remained to be done was merely in execution of the decree.

We are of opinion that as to the Buckingham Slate Company the decree of March 16, 1911, was final, and that more than a year having elapsed before an appeal was taken, all inquiry into the propriety of that decree as to the slate company is barred by limitation.

It will be observed that the real subject of controversy here is the right to the royalties for the slate manufactured by the Buckingham Slate Company. Did these royalties belong to Mrs. Jones and her co-owners in whole, or to the defendant Pitts in part, and in what proportion?

The boundary between the two tracts of land, one of which was owned by Mrs. Jones and others and the other by A. L. Pitts is incidental to the ownership of the royalties. *Hutchinson* v. *Kellam*, 3 Munf. (17 Va.) 202; *Cook* v. *Daugherty*, 92 Va. 500, 39 S. E. 223. The pecuniary limit of the jurisdiction of this court is that at least three hundred dollars must be involved. That three hundred dollars was not involved at the time the decree complained of was entered appears upon the face of the decree. It is true that we have held that "where the effect of a judgment in a particular case is to draw in question the validity of a claim to an amount of greater value than the jurisdictional sum of the appellate court, although the amount involved in the present action is not as large as the minimum required, as where a subscription of over three hundred dollars of stock is drawn in question in an action on quotas of

less than three hundred dollars, or where the validity of a bond for a larger amount is drawn in question in an action on a coupon cut therefrom for a smaller amount,'' a writ of error will lie, if it appears that the judgment conclusively settles the rights of the parties as to the larger amount. Burks on Pleading and Practice, sec. 377.

It was so held in *Stuart* v. *Valley Ry. Co.*, 32 Gratt. (73 Va.) 146; *Campbell* v. *Smith*, 32 Gratt. (73 Va.) 288; *Elliott* v. *Ashby*, 104 Va. 716; 52 S. E. 383; *International Harvester Co.* v. *Smith*, 105 Va. 683, 54 S. E. 859. But in all those cases it was certain that the effect of the decision was to settle the rights of the parties as to a sum in excess of the minimum of this court's jurisdiction— not as a matter of conjecture or possibility, but beyond all dispute, as where there was an action upon a coupon cut from a bond, or where the action was brought to recover an assessment upon a stock subscription greater in amount than the minimum jurisdiction of the court.

In *Elgin* v. *Marshall*, 105 U. S. 578, 1 Sup. Ct. 484, 247 Ed. 249, the Supreme Court held directly to the contrary and its decision seems to be in accordance with the general current of authority in other States than ours. While, therefore, in cases identical with those which we have already decided we might feel bound by the rule of *stare decisis*, we are not disposed to extend the principle of those cases further than we have already gone.

There is nothing in this record to which we can turn and say with certainty that it involves the interest of any party concerned to the extent of three hundred dollars. If the operation of the quarry is continued and royalties are earned, it would follow that some time in the future a sum equal to or greater than three hundred dollars might become involved. On the other hand those operations may already have ceased, for anything

we know to the contrary, or are liable to cease at any moment in the future, and in the meantime this record affords no criterion by which we can undertake to say that the minimum sum necessary to give this court jurisdiction is involved. The jurisdiction of this court must be made by the appellant affirmatively to appear. *Williamson* v. *Payne,* 103 Va. 551, 49 S. E. 660.

We are of opinion, therefore, that the appeal must be dismissed as having been improvidently awarded.

*Dismissed.*